Mr. Justice Merrick
delivered the opinion of the court.
I have been requested to deliver the opinion of the court in these license cases.
The cases against Oyster and Daly were cases where the information had been filed against the party as a produce dealer, the charge being that he was engaged in the sale of butter and eggs, and the question was raised whether butter and eggs constitute “produce” within the meaning of the law.
There is very little to be said with reference to that matter except to refer to what has been understood to be the common usage and practice of society and the sense in which the word “produce” has been used. The argument at the bar was, as against the information, that produce meant only those things which were the product directly of the *286 soil, such as cereals and fruits, as distinguished from those things which were the product of human industry, and not derived from, but directly connected with, the product of the soil.
But the common parlance of the country, and the common practice of the country, have been to consider all those things as farming products or agricultural products which had the siius of their production upon the farm, and which were brought into condition for the uses of society by the labor of those engaged in agricultural pursuits, as contra-distinguished from manufacturing or other industrial pursuits. •
The product of the dairy or the product of the poultry yard, while it does not come directly out of the soil, is necessarily connected with the soil and with those who are engaged in the culture of the soil. It is, in every sense of the word, a part of the farm product. It is depended upon and looked upon as one of the results and one of the means of income of the farm, and in. a just sense, therefore, it may be considered produce.
The word “produce” has no definite, exact and technical meaning. It may be used in a larger or more restricted sense. But we must look to what the habits and usages of society are, and what has been the practice with regard to it, so as to give an interpretation to this word which is not a technical one under the law. And in that aspect of it the court is at no difficulty in determining that, in their judgment the words “produce dealer” as used in the license law of the District of Columbia, which says that “produce dealers shall pay $25 annually, and every person whose, business it is to buy and sell produce, fish, meats and fruits from wagons and carts, shall be regarded as a produce dealer,” apply to one who brings eggs and butter to vend in the market as much as to one who brings only cereals or fruits or what is ordinarily called “ garden stuff.”
We therefore shall remand the cases against Oyster and Daly to the police court in order that they may be proceeded with to judgment.
*287 The case against Emmert is an information against a party for selling bacon, hams, dried meat and other meats of that sort, which are not the meat of animals slaughtered just before being sold, but are cured meats, and the question there is whether the party is liable to a license as a produce dealer.
While the clause in the law says that “Produce dealers shall pay annually $25; and every person whose business it is to buy and sell produce, fish, meats and fruits from wagons and carts shall be regarded as a produce dealer,” it also contains this qualification, “that no additional license shall be required from produce dealers for selling meat.”
That seems simply to indicate, not that the selling of meat is characteristic of a produce dealer, but that the produce dealer who gets his license as such, has the further privilege, or a sort of grace and favor extended to him, within the limited amount mentioned in the statute, because it says that he shall pay no additional license where the capital invested is less than $1,000, showing that the idea was to make the produce dealer a privileged character to the extent of his small dealings, that he might supply the necessities of society in having at his stall not only the product of the garden and the product of the stream, as fish and fruits, but that he might also sell a limited quantity of bacon and the like, with dried beef and other things which go to make up the complement of a produce dealer’s establishment, without thereby depriving himself of the character and privileges of a produce dealer..
The word meat as used in connection with the butcher’s employment, is used in its very largest sense and without any restriction as to the quantity which he is privileged to sell.
The authorities do not use, in the licenses for butchers, or in the regulations about butchers, the same term as was used in the statute of the United States, “butchers’ meats,” which would exclude the dried meats from the occupation of the butcher; but they say that the butcher and every person whose business it is to sell meats from market stalls, *288 shall be regarded as a butcher. There they have defined a butcher in particular language. Any meat sold at a market stall comes within the function of a butcher and belongs to his office, and his right to sell shall be determined by the right of the butcher to sell meats.
So far as the license of the butcher is concerned, the law goes on to provide that he shall pay certain definite sums in the Western Market, the Eastern Market, in the Georgetown Market and in the Northern Market, for the occupation of his stall, but it is to be paid not as a license, but as a rent for the use and occupation of that stall. A butcher pays no license as license. He pays part of the revenues of the city as a rental for the occupation of a portion of the ground belonging to the city in these several market houses.
So far as the Central Market is concerned, there is no provision in the statute requiring him to pay any rental. That seems to be provided for by the regulations of the market itself and in the obligation of the market company to pay a certain annual stipend to the District of Columbia. The particular corporation, holding that market, is entitled to the rentals of that market, as the city owning these other markets enumerated is entitled to the rentals of the stalls of those markets. It is only in the character of rentals, and not in the character of licenses that the butcher makes any payment at all.
Finding then that the traverser Emmert deals, according to the information, only in meats, and dealing in meats of any sort, whether fresh or cured meats being defined to be ’the thing that characterizes the trade of a butcher as declared in the 15th paragraph of the statute, the court is constrained to say that he does not come within the characteristics of a produce dealer who has to have a license and, as there is no specific license assigned to a butcher in the Central Market, he must go acquit of this information.